MITCHELL *versus* MITCHELL.

1. To authorise the reading, in evidence, in a court in this State, of the copy of a deed recorded in another, it should be shown that, by the laws of that State, such instruments are required to be recorded, and that the recording office had authority to certify copies.

2. To authorise the copy to be read, on the ground that the original was lost, the former existence of the deed, and the loss of it, should be shown by the testimony of some one capable of identifying the paper, and not by persons who could not read, or by hearsay.

This was an action of detinue, in Dallas Circuit court, for slaves, brought by Mitchell and others, against Mitchell. The plaintiffs relied on a deed of gift from their ancestor. They offered in evidence what purported to be a copy of the deed, certified by the Clerk of the Superior court of Wilkinson county, Georgia, to have been truly transcribed from the records in his office. To this was annexed, the certificate of the Governor of Georgia, that the person so certifying, was Clerk, &c. That this paper might be received as evidence, one of the plaintiffs swore that he was the son of Charles Mitchell, the ancestor; that he received all his father's papers; that he knew that the original deed was not in the possession of the donees: that he could not read himself, and knew not whether there ever was such a deed, but had heard it talked of in the family; that he had heard one of his sisters, who could not read, say she had washed up a paper, which she understood to be the deed, in the clothes of her father. The plaintiffs also proved that the defendant had admitted, in conversation, that there was such a deed, and said, that

Charles Mitchell had promised to destroy it; and that witness replied, that the deed was recorded. Another witness, living in Alabama, swore, that he had heard Mitchell say that the deed was a nullity. It was in proof, that the donor and donees lived together; that in 1809, the donees were minors, and that the slaves continued in the possession of Charles Mitchell till they were purchased by the defendant; and that, at the time of the purchase, said Charles Mitchell was a debtor to a considerable amount.

The court refused to permit the copy of the deed to be introduced in evidence, upon this proof. This decision of the court, was the cause assigned for error.

*Gordon* for plaintiff —*Pickens, contra.*

SAFFOLD, J.—The plaintiffs brought an action of *detinue*, for sundry slaves, against this defendant, in the court below; and in support of the action, offered in evidence, an instrument, purporting to be a copy of a deed of gift from their ancestor to them, certified by the clerk of the superior court of Wilkinson county, Georgia, to have been truly transcribed from the records of his office. To this certificate was also annexed, in due form, the certificate of the Governor of Georgia, that the person so certifying the copy, was, at the time, Clerk, &c. To lay the foundation for the introduction of the secondary evidence, one of the plaintiffs swore that he was a son of Charles Mitchell, the ancestor; that he had received all his father's papers, and knew that the original deed was not in the possession of the donees, and knew not where it was; that he himself could not read, and knew not whether there was such a

deed, but had heard it talked of in the family. He had heard one of his sisters, (who could not read,) say she had washed up a paper, which she understood to be the deed, in the clothes of her father.

The plaintiff also proved, that subsequent to the purchase of the negroes, by the defendant, in a conversation between the witness and the defendant, the latter admitted that he knew of the deed, and that said Charles Mitchell promised to destroy it; to which witness replied, that the deed was recorded. Another witness, living in Alabama, swore that said Mitchell said, he knew that the deed was a nullity.

It was further in proof, that the donor and donees lived together; that, in 1809, the donees were minors; that the negroes were in possession of Charles Mitchell, until purchased by the defendant; and that, at the time of the purchase, said Mitchell was a debtor to a considerable amount.

The Circuit court ruled, that the copy of the deed could not, upon this proof, be received as evidence.

The rejection, by the court, of the copy of the deed of gift, in favor of the plaintiffs, is the cause assigned for error.

To authorise the introduction of the copy of the deed, the plaintiffs should have shown, among other things, that, by the laws of Georgia, such conveyances are required to be recorded; and, as a consequence thereof, that the Clerk recording them, or keeping the record, had authority to certify copies. If the recording was an *extra official* act, the Clerk had no authority to certify the copy, as evidence.— The legality of the procedure is not to be presumed, because it is not the course of the common law.— "In order to prove a deed, agreement, or other private

instrument, it is necessary, first, to *produce* the deed, or to excuse the omission, by proof that it has been lost or destroyed, or is in the hands of the adverse party, who has had notice to produce it. For the best evidence of the contents of a written instrument, consists in the actual production of it; and secondary evidence of it can not be admitted, until the impossibility of producing it, has been manifested to the court."[a]

[a] 1 Starkie, 329

The person, one of the plaintiffs, who held his father's papers, after his death, being illiterate, was incapable of examining for the original deed; some of the other plaintiffs, who could read writing, could, and therefore should, have made the search, and deposed to the result: this plaintiff could also have proven, that, so far as his knowledge extended, these were all the papers of which the decedent died possessed. The proof, by the plaintiff alluded to, that he had heard his *illiterate* sister say she had washed up a paper in her father's clothes, which *she understood* to be the deed in question, was wholly inadmissible and ineffectual, because of the incapacity of the individual to read, or in any way indentify the paper she had destroyed; and also the *hearsay* character of the proof.

Under these circumstances, the Circuit court did right in rejecting the copy of the deed; and the judgment must be affirmed.